UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CLARENCE L. ARTIS, JR.,

                                    Plaintiff,

                                                        9:10-CV-0427
v.                                                      (GTS/TWD)

C.O. ADAM, et al,

                                    Defendants.
_____

APPEARANCES:                            OF COUNSEL:

CLARENCE L. ARTIS, JR., 10-B-0810
Plaintiff *pro se*
Sing Sing Correctional Facility
354 Hunter Street
Ossining, New York 10562

BROOME COUNTY ATTORNEY'S OFFICE        AARON J. MARCUS, ESQ.
Counsel for Defendants
Edwin L. Crawford County Office Building
P.O. Box 1766
Binghamton, New York 13902-1766

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## REPORT-RECOMMENDATION and ORDER

This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has

been referred to me for Report and Recommendation by the Honorable Glenn T. Suddaby,

United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).  Plaintiff

Clarence L. Artis, Jr., claims that, *inter alia*, he was subjected to excessive force and falsely

charged with assault at the Broome County Correctional Facility ("BCCF").  Currently pending

before the Court is Defendants' motion for summary judgment pursuant to Federal Rule of Civil

Procedure 56.  (Dkt. No. 46.)  For the reasons discussed below, I recommend that Defendants'

motion be granted in part and denied in part.

## I.   FACTUAL AND PROCEDURAL SUMMARY

Plaintiff arrived at BCCF on February 7, 2008.  (Dkt. No. 46-38 ¶ 1.)[1]  Plaintiff's

complaint arises from several different incidents that allegedly occurred at the facility.

### A.   June 6, 2008 Incident

In his verified complaint, Plaintiff alleges that he was attacked by correctional officers on

June 6, 2008.  (Dkt. No. 1 at 5.)  Plaintiff alleges that he tried to cover up so that he could not see

who was doing what.  (Dkt. No. 1 at 6.)  Before he closed his eyes, Plaintiff saw Defendants

Lieutenant Timothy F. Hill and Defendant Sergeant Jeffrey C. Katen punch and kick him in the

ribs and face.  *Id.*  He alleges that his ribs were broken and that his back, arms, and hip bone were

injured.  *Id.* at 5.

Defendants have filed detailed affidavits from the officers involved in the incident.  They

declare that Plaintiff and several other inmates were seen smoking in the recreation yard.  (Dkt.

No. 46-38 ¶ 2.)  Defendant Hill directed that the inmates be "locked in" and that each of them be

advised of such.  *Id.* ¶ 3.  When Defendant Hill advised Plaintiff, Plaintiff became unruly and

began banging on his door and using profanity.  *Id.* ¶ 4.  Defendant Hill advised Plaintiff that he

---

[1]      Although Plaintiff opposed Defendants' motion for summary judgment, he did not
file any opposition to Defendants' statement of material facts pursuant to Local Rule 7.1(a)(3).
Plaintiff was warned of the consequences of failing to properly respond to Defendants' statement
of material facts.  (Dkt. No. 46-40.)  The Court has therefore accepted Defendants' facts to the
extent that they are supported by accurate citations to the record.  N.D.N.Y. L.R. 7.1(a)(3) ("<u>The
Court shall deem admitted any properly supported facts set forth in the Statement of Material
Facts that the opposing party does not specifically controvert</u>.) (emphasis in original).

was sending him to the disciplinary housing unit pending a hearing.  *Id*. ¶ 5.  Defendant Hill

summoned "rovers" to escort Plaintiff to the disciplinary housing unit.  *Id*.  Plaintiff told

Defendant Hill that Hill was going to have "trouble in the pod."  *Id*. ¶ 6.

The rovers, including Defendant Katen and Defendant Corrections Officer Adam M.

Valls[2] along with non-defendant McCafferty, arrived and ordered Plaintiff to sit on his bunk.  *Id*.

¶ 7.  Plaintiff refused and said that "more officers would be needed if they planned on entering

his cell to extract him" and that they should expect a fight if they came into his cell to extract

him.  *Id*.  Plaintiff sat when Defendant Hill "presented his pepper spray canister."  *Id*. ¶ 8.

Defendant Valls handcuffed Plaintiff and the rovers escorted Plaintiff to the disciplinary housing

unit.  *Id*.

At BCCF, all inmates entering the disciplinary housing unit must be strip searched.  *Id*. ¶

10.  Plaintiff initially complied with strip search procedures, but refused "to squat and spread his

cheeks."  *Id*. ¶¶ 11-12.  Instead he became confrontational, took a defensive posture, and turned

abruptly toward non-defendant Officer McCafferty.  *Id*. ¶ 12.  At that point, Defendant Valls took

Plaintiff to the bunk and restrained him.  *Id*. ¶ 13.  Plaintiff resisted and Defendant Katen and

non-defendants McCafferty and Mistretta assisted Defendant Valls with restraining him.  *Id*. ¶

14.  Plaintiff continued to struggle despite being ordered to place his hands behind his back.  *Id*. ¶

15.  Defendant Katen was ultimately able to handcuff Plaintiff.  *Id*. ¶ 16.  At no point was

anything but "empty hands" use of force used.  *Id*. ¶ 17.  No punches or kicks were thrown by

any of the officers.  *Id*.  An x-ray of Plaintiff's right ribs on July 3, 2008 showed "[n]o evidence

---

[2]        Defendant Valls is identified in the complaint as Defendant C.O. Adam.  (Dkt. No. 35.)  The Clerk is directed to amend the caption to reflect Defendant Valls' correct name.

of old or recent fracture." (Dkt. No. 46-18.)

Plaintiff did not file any grievances regarding this incident. (Dkt. No. 46-38 ¶ 77.)

**B.      April 29, 2009 Incident**

In his verified complaint, Plaintiff alleges that he was assaulted by another inmate on

April 29, 2009, which resulted in a chipped bone in his hand. (Dkt. No. 1 at 5.) Plaintiff alleges

that Defendant Corrections Officer Joseph A. Jellick "wrote a false report claiming that I was the

aggressor which the camera clearly proved false." *Id*. at 6. Plaintiff alleges that Defendant

Corrections Officer Patricia A. Kleinsmith "falsely accused me of assaulting an inmate when the

camera clearly show[ed] this inmate [e]nter[ed] into my assigned cell and me running out locking

him in the cell. The camera also show[ed] me walking away from him twice trying my best to

avoid a[] confrontation." *Id*. Plaintiff claims that Defendant Sheriff David E. Harder and

Defendant Jail Administrator Mark W. Smolinsky[3] falsely accused Plaintiff of assaulting a

known gang member. *Id*. at 7.

Defendant Jellick declares on April 29, 2009, he observed Plaintiff arguing with inmate

Tyrone Kennedy. (Dkt. No. 46-29 ¶ 2.) Defendant Jellick ordered Plaintiff twice to stop

arguing, but Plaintiff went up to Kennedy's cell and dumped his bin over the top tier. *Id*.

Defendant Jellick ordered Plaintiff to "lock in," but instead he ran down the stairs to where

Kennedy was picking up his belongings. *Id*. A fight ensued between the inmates. *Id*. Defendant

Jellick called a "code yellow" over the radio. *Id*. Other officers responded and broke up the

fight. *Id*. Plaintiff was taken to the floor of the cell and placed in handcuffs. (Dkt. No. 46-38 ¶

---

[3]      Defendant Smolinsky was identified in the complaint as "Major Smolynsk." The
Clerk is directed to amend the caption to reflect the correct spelling.

35.)  As Plaintiff was returned to his feet, he began to spit blood.  *Id.* ¶ 36.  He was ordered to

refrain from spitting in the direction of others in the immediate area.  *Id.*

Plaintiff and Kennedy were escorted to the medical unit.  *Id.* ¶ 37.  There, Plaintiff began

to spit blood onto the hallway floor.  *Id.*  Plaintiff received medical care and was escorted back to

his housing unit.  *Id.* ¶ 38.

Both Plaintiff and Kennedy were charged with facility housing code violations and given

hearings.  *Id.* ¶ 40.  Defendant Corrections Officer William J. Brown[4] and non-defendant former

Sergeant Ronald Evans conducted Plaintiff's hearing on May 13, 2009.  (Dkt. No. 46-23 ¶¶ 11-

12.)  Plaintiff was found guilty of fighting, sanctioned to forty-five days of keeplock, and ordered

to pay a $25.00 surcharge.  (Dkt. No. 46-38 ¶ 42.)

Immediately after the fight, Defendant Kleinsmith was assigned to investigate the

altercation between Plaintiff and Kennedy.  (Dkt. No. 46-12; Dkt. No. 46-31 ¶ 2.)  Defendant

Kleinsmith reviewed the incident reports and the video of the incident.  (Dkt. No. 46-31 ¶ 3.)

She obtained supporting depositions from the responding officers and statements from all willing

inmate witnesses.  *Id.*  Based on that evidence, Defendant Kleinsmith determined that Plaintiff

incited the fight.  *Id.* ¶ 4.  She also determined that Plaintiff bit Kennedy's cheek, breaking the

skin and drawing blood.  *Id.*  Defendant Kleinsmith prepared a report detailing her findings on

---

[4]        The complaint lists "C.O. John Doe" and "John Doe" as parties, but does not
make specific allegations against either of them.  (Dkt. No. 1 at 2-3.)  On September 1, 2010,
Plaintiff identified "C.O. Bill Brown" as "John Doe."  (Dkt. No. 26.)  On September 15, 2010, a
summons was issued as to Bill Brown.  (Dkt. No. 29.)  An acknowledgment of service was filed
on November 23, 2010, showing service on Bill Brown.  (Dkt. No. 30.)  On November 24, 2010,
an answer was filed on behalf of, *inter alia*, William Brown. (Dkt. No. 34.)  On November 30,
2010, the Court issued a text order stating that "William Brown is the defendant formerly
identified as C.O. John Doe."  On the record currently before the Court, it does not appear that
the second Doe defendant was ever identified.

May 15, 2009.  (Dkt. No. 46-12.)

Thereafter, Defendant Kleinsmith charged Plaintiff with Assault in the Second Degree in violation of New York Penal Law § 120.05.  (Dkt. No. 46-31 ¶ 4.)  In addition, Defendant Kleinsmith charged Plaintiff with Aggravated Harassment of an Employee by an Inmate in violation of New York Penal Law § 240.32 because he spit blood in the direction of the responding officers.  *Id.*  A Broome County grand jury indicted Plaintiff on the charge of Assault in the Second Degree on May 22, 2009.  (Dkt. No. 46-31 ¶ 7.)  Neither Defendant Harder nor Defendant Smolinsky co-signed any paperwork related to the assault charge or Plaintiff's indictment on that charge.  (Dkt. No. 46-38 ¶ 55.)

After he was indicted, Plaintiff wrote to Defendant Smolinsky.  (Dkt. No. 46-14; Dkt. No. 46-38 ¶ 50.)  Plaintiff asked Defendant Smolinsky to reverse the forty-five day keeplock sentence and drop the assault charge against him.  (Dkt. No. 46-38 ¶ 50.)  Plaintiff did not mention Defendants Jellick or Kleinsmith in the letter.  (Dkt. No. 46-14.)

Plaintiff sent a similar letter to Defendant Harder on June 5, 2009.  (Dkt. No. 46-38 ¶ 51.)  In that letter, Plaintiff stated that Kennedy "constantly brag[s] about how he know[s] mostly all the C.O.s and how they take care of him especially the C.O. that wrote the incident report."  (Dkt. No. 46-15 at 1.)

On the day he received the letter, Defendant Harder directed Defendant Smolinsky to address the issues raised in the letters.  (Dkt. No. 46-38 ¶ 52.)  Defendant Smolinsky declares that because "the matter had been turned over to the Broome County District Attorney's Office, and the plaintiff had actually been indicted, we decided that it would be inappropriate for us to intervene before the criminal matter was adjudicated."  (Dkt. No. 46-35 ¶ 8.)  Defendant

Smolinsky's declaration does not specify who the "we" was.  On June 15, 2009, non-defendant Lieutenant Robert Irwin advised Plaintiff of the decision.  *Id*.

### D.      July 24, 2009 Incident

Plaintiff alleges that he was attacked by a white supremacist named Jacob Rogers and penalized with forty-five to sixty days in the Special Housing Unit.  (Dkt. No. 1 at 6.)  Neither Plaintiff's complaint nor Defendants' declarations describe this event.  Defendants have provided the Court with video of the July 24, 2009 incident.  (Defs.' Mot. Summ. J., Ex. J, traditionally filed.)  Plaintiff did not file any grievances with BCCF regarding this incident.  (Dkt. No. 46-38 ¶ 77.)  Because, as discussed below, Plaintiff failed to exhaust his administrative remedies regarding this claim, I have not reviewed the video of this incident.

### E.      March 15, 2010 Incident

Plaintiff alleges that he was attacked by Defendants Valls and Jellick on March 15, 2010, just before he was transferred to Elmira Correctional Facility.  (Dkt. No. 1 at 5.)  Plaintiff alleges that Defendant Valls bent back Plaintiff's thumb "to the point where I'm still having problems using my finger."  *Id*.  He alleges that Defendant Valls also punched and kicked him.  *Id*.  Plaintiff alleges that Defendant Jellick stomped on his back so that he could not move.  *Id*.  He alleges that his back and ankles were injured.  *Id*.

Defendant Valls declares that on March 15, 2010, he and Defendant Jellick were assigned to transport Plaintiff to state prison.  (Dkt. No. 46-37 ¶ 13.)  Defendants went to pick up Plaintiff as he was eating his breakfast.  (Dkt. No. 46-29 ¶ 5.)  As Defendants approached, Plaintiff looked directly at Defendant Jellick and immediately got up and ran to his cell.  *Id*.  As Defendants Valls and Jellick approached Plaintiff's cell, Defendant Jellick saw Plaintiff squatting over his toilet

with his pants down and his hand in his anus. *Id*. ¶ 6. Defendant Valls also saw Plaintiff sticking

his hand up his anus. (Dkt. No. 46-37 ¶ 14.) In addition, he observed a broken plastic bag "and

items other than feces or toilet paper in the toilet." *Id*. Defendant Jellick observed a tray pass

glove on the floor in front of the toilet. (Dkt. No. 46-29 ¶ 6.) Defendant Valls ordered Plaintiff

to get on the floor. (Dkt. No. 46-37 ¶ 14.) Plaintiff complied. *Id*. Defendant Valls cuffed him

and placed him on his side. *Id*. As Defendants Valls and Jellick packed Plaintiff's property,

Plaintiff "became verbally abusive" and called both Defendants "faggots." *Id*. ¶ 15.

As Defendants Valls and Jellick escorted Plaintiff to the intake unit, Plaintiff told them

that he was going to have his family kill them. *Id*. Once Plaintiff was in the intake cell,

Defendants Valls and Jellick ordered him to strip pursuant to facility protocol. *Id*. ¶ 16. Plaintiff

did not comply. *Id*. Defendant Valls restrained Plaintiff at his bunk. *Id*. Non-defendant

Lieutenant Chris Guinan ordered Plaintiff to strip. *Id*. Plaintiff complied. *Id*. Defendant Valls

declares that the strip search was completed without further incident. *Id*. Defendant Valls

declares that he never punched or kicked Plaintiff and that Defendant Jellick never stomped on

Plaintiff's back. *Id*. ¶ 17. Defendant Jellick declares that "[a]t no point in time was I forced to

become physically involved with the plaintiff as, for the most part, he was compliant with our

orders." (Dkt. No. 46-29 ¶ 8.)

Plaintiff did not file any grievances with BCCF regarding this incident. (Dkt. No. 46-38 ¶

77.)

### F.    Issues with Visits

Plaintiff alleges that his mother tried to visit him but was refused by unnamed

individuals. (Dkt. No. 1 at 6.) Plaintiff claims that he was given a non-contact visit on another

occasion by unnamed individuals despite never committing any visiting room violations.  *Id.*

> ### G.   Defamation

Plaintiff alleges that "[a]ll of these officer[s]" accused him of being a rapist "when I am no rapist at all."  (Dkt. No. 1 at 7.)

> ### H.   Procedural History

Plaintiff filed the complaint in this action on April 12, 2010.  (Dkt. No. 1.)  Plaintiff claims that he has lost forty pounds and lost "countless hours" of sleep due to the stress he experienced at BCCF.  *Id.* at 6.  Plaintiff claims that he constantly has nightmares about being killed in prison by officers.  *Id.* at 7.  Plaintiff requests $3,500,000 in damages.  *Id.* at 8.

Defendants now move for summary judgment.  (Dkt. No. 46.)  Plaintiff has opposed the motion.  (Dkt. No. 49.)

## II.   APPLICABLE LEGAL STANDARDS

> ### A.   Legal Standard Governing Motions for Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists.  *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006).  Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist.  *Salahuddin*, 467 F.3d at 272-73.  The nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material

facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).  Rather, a dispute regarding a material fact is *genuine* "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In determining whether a genuine issue of material[5] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008).

### B.      Legal Standard Governing Motion to Dismiss for Failure to State a Claim

To the extent that a defendant's motion for summary judgment under Federal Rule of Civil Procedure 56 is based entirely on the allegations of the plaintiff's complaint, such a motion is functionally the same as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  As a result, "[w]here appropriate, a trial judge may dismiss for failure to state a cause of action upon motion for summary judgment." *Schwartz v. Compagnise Gen. Transatlantique*, 405 F.2d 270, 273 (2d Cir. 1968) (citations omitted); *accord*, *Katz v. Molic*, 128 F.R.D. 35, 37-38 (S.D.N.Y. 1989) ("This Court finds that . . . a conversion [of a Rule 56 summary judgment motion to a Rule 12(b)(6) motion to dismiss the complaint] is proper with or without notice to the parties.").  Accordingly, it is appropriate to summarize the legal standard governing Federal Rule of Civil Procedure 12(b)(6) motions to dismiss.

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that the complaint fails to state a claim upon which relief can be granted.  In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*,

---

[5]      A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson*, 477 U.S. at 248.

10

"a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.

Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means

that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.

Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added). "Determining whether a

complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial

experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to

infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not

shown -- that the pleader is entitled to relief." *Id.* at 679 (internal citation and punctuation

omitted).

   "In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the

material facts alleged in the complaint as true and construe all reasonable inferences in the

plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted).

Courts are "obligated to construe a *pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72

(2d Cir. 2009). However, "the tenet that a court must accept as true all of the allegations

contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements

of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S.

at 678.

## III.   ANALYSIS

### A.   June 6, 2008 Incident

   Plaintiff alleges that Defendants Hill, Katen, and Valls subjected him to excessive force

on June 6, 2008. (Dkt. No. 1 at 5.) Defendants argue that Plaintiff's claims regarding the June 6,

11

2008 incident should be dismissed because (1) Plaintiff failed to exhaust his administrative remedies; and (2) Plaintiff has not raised a triable issue of fact that Defendants used excessive force.  (Dkt. No. 46-39.)  I will address only the first argument, as it is dispositive.

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  In order to properly exhaust administrative remedies under the PLRA, inmates are required to complete the administrative review process in accordance with the rules applicable to the particular institution to which they are confined.  *Jones v. Bock*, 549 U.S. 199, 218 (2007).  If a prisoner has failed to properly follow each of the applicable steps prior to commencing litigation, he has failed to exhaust his administrative remedies.  *Woodford v. Ngo*, 548 U.S. 81 (2006).

BCCF has two varieties of administrative remedy processes.  The first, which is applicable to the June 6 incident, is referred to as the Inmate Grievance Process.  Under that process, if an inmate feels that he has "a legitimate grievance against the facility," he must first "[a]ttempt to get the issue resolved with the housing officer."  (Dkt. No. 46-21 at 1.)  Next, the inmate must request a grievance form from the grievance officer and file it within five business days.  *Id*.  If the inmate is not satisfied with the response from the grievance officer, the inmate may appeal to the Corrections Facility Administrator.  *Id*.  If the inmate is not satisfied with the response from the Corrections Facility Administrator, he or she may appeal to the State

Commission on Correction. *Id.* The Commission is required to respond within forty-five days of receipt of the appeal. *Id.*

Plaintiff was required to follow the Inmate Grievance Process in order to exhaust his administrative remedies regarding the alleged use of excessive force. Plaintiff did not file any grievances. (Dkt. No. 46-38 ¶ 77.) Therefore, Plaintiff did not exhaust his administrative remedies regarding the June 6, 2008 incident.

Plaintiff's failure to exhaust, however, does not end the inquiry. The Second Circuit has held that a three-part inquiry is appropriate where a prisoner has failed to exhaust his available administrative remedies. *Hemphill v. New York*, 380 F.3d 680, 686, 691 (2d Cir. 2004).[6] First, "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner." *Hemphill*, 380 F.3d at 686 (citation omitted). Here, as discussed above, administrative remedies were in fact available to Plaintiff.

Second, if those remedies were available, "the court should . . . inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it . . . or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Id.* (citations omitted). Here, Defendants preserved the exhaustion defense by asserting it in their answer to the complaint. (Dkt. No. 24 ¶ 16.) Further, Plaintiff has not even alleged, much less produced evidence, that any of the named Defendants inhibited Plaintiff's ability to exhaust his administrative remedies.

---

[6] The Second Circuit has not yet decided whether the *Hemphill* rule has survived the Supreme Court's decision in *Woodford*, 548 U.S. 81. *Amador v. Andrews*, 655 F.3d 89, 102 (2d Cir. 2011).

Third, "the court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." *Hemphill*, 380 F.3d at 686 (citations and internal quotations omitted). Justification "must be determined by looking at the circumstances which might understandably lead . . . uncounselled prisoners to fail to grieve in the normally required way." *Giano v. Goord*, 380 F.3d 670, 678 (2d Cir. 2004). Here, Plaintiff has not given any reason for failing to file a grievance regarding the June 6, 2008 incident. Plaintiff's opposition to the motion for summary judgment does not even mention Defendants' argument regarding exhaustion. (Dkt. No. 49.) Therefore, I recommend that the claims against Defendants Valls, Hill, and Katen regarding the June 6, 2008 incident be dismissed for failure to exhaust administrative remedies.

**B.      April 29, 2009 Incident**

Plaintiff alleges that Defendant Jellick "wrote a false report" that Plaintiff was the aggressor in the April 29, 2009 incident involving inmate Kennedy. (Dkt. No. 1 at 6.) He further alleges that Defendant Kleinsmith "falsely accused" Plaintiff of assault after her investigation of the incident. *Id*. Finally, Plaintiff alleges that Defendants Harder and Smolinsky falsely accused him of assaulting a known gang member and "supported and co-signed" the indictment against Plaintiff. *Id*. at 7. Read broadly, the complaint thus asserts the following claims regarding the April 29, 2009 incident: (1) a malicious prosecution claim against Defendant Kleinsmith; (2) a false arrest claim against Defendant Kleinsmith; (3) malicious prosecution claims against Defendants Harder and Smolinsky; and (4) claims that Defendant Jellick issued a false misbehavior report.

Defendants argue that these claims should be dismissed because (1) Plaintiff failed to

14

exhaust his administrative remedies; (2) Plaintiff has not raised a triable issue of fact regarding

his malicious prosecution or false arrest claims because there was probable cause to charge him

with Assault in the Second Degree; and (3) Defendants Harder and Smolinsky played no role in

charging Plaintiff with the assault.  (Dkt. No. 46-39.)  Defendants have not addressed the

allegations that Defendant Jellick wrote a false misbehavior report.  Rather, they have addressed

the claims against Defendant Jellick as malicious prosecution and false arrest claims.  (Dkt. No.

46-39 at 18-19.)

       1.      <u>Exhaustion of Administrative Remedies</u>

      Defendants argue that Plaintiff failed to exhaust his administrative remedies.  (Dkt. No.

46-39 at 15-18.)  For the reasons discussed below, I find that Defendants have not met their

burden by showing that Plaintiff failed to exhaust his administrative remedies regarding the April

29, 2009 incident.

      As mentioned above, BCCF has two types of administrative remedy procedures.  The

first, as discussed above, applies when an inmate has "a legitimate grievance against the facility."

The second variety of administrative review process available to inmates at BCCF is the

Disciplinary Appeals Process.  Under that process, an inmate who is "not satisfied with the

actions of the disciplinary officer" can write to the Corrections Facility Administrator to appeal

the disciplinary hearing.  (Dkt. No. 46-7.)  Defendant Smolinsky is the facility administrator.

(Dkt. No. 46-35 ¶ 1.)

      It is not clear which administrative review process applies to Plaintiff's complaints about

the April 29, 2009 incident.  Arguably, an allegation that officers falsely accused an inmate of

assault could be construed as "a legitimate grievance against the facility."  If that is the case,

15

Plaintiff was required to follow the Inmate Grievance Process in order to exhaust his administrative remedies.  On the other hand, such an allegation could be construed as a complaint about a penalty or sanctions resulting from a disciplinary hearing.  If that is the case, Plaintiff was required to use the Disciplinary Appeals Process.

Although Defendants argue that Plaintiff did not exhaust his administrative remedies as to any of his claims (Dkt. No. 46-39 at 15-18), they do not address the incidents separately.  Rather, they simply make the broad argument that Plaintiff failed to exhaust his administrative remedies because he never filed any grievances at the facility.  Defendants do not explicitly argue that Plaintiff was required to use the Inmate Grievance Process rather than the Disciplinary Appeal Process to properly exhaust his remedies regarding the April 29, 2009 incident.  Because Defendants are the moving parties, I view the facts in the light most favorable to Plaintiff and conclude, for the purposes of this motion, that Plaintiff was required to exhaust only the less onerous Disciplinary Appeal Process regarding this incident.

It is undisputed that Plaintiff wrote to Defendant Smolinksy to ask that his disciplinary sentence be overturned.  (Dkt. No. 46-38 ¶ 50.)  Viewing the facts in the light most favorable to Plaintiff, I find that Plaintiff properly exhausted his claims regarding the April 29, 2009 incident by writing to Defendants Smolinsky.  Therefore, I will address the merits of Plaintiff's claims.

    2.    <u>Malicious Prosecution</u>

Read broadly, the complaint alleges that Defendant Kleinsmith maliciously prosecuted Plaintiff.  Defendants move for summary judgment of this claim, arguing that the undisputed facts show that Defendant Kleinsmith had probable cause to charge Plaintiff.  (Dkt. No. 46-39 at 18-19.)  Defendants are correct.

16

In order to maintain a § 1983 claim for malicious prosecution, a plaintiff must plead facts plausibly suggesting that (1) the defendant initiated a prosecution against the plaintiff; (2) the defendant lacked probable cause to believe the proceeding could succeed; (3) the defendant acted with malice; (4) the prosecution was terminated in the plaintiff's favor; and (5) there was a "sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Rohman v. New York City Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000). "The existence of probable cause is a complete defense to a claim of malicious prosecution in New York, and indictment by a grand jury creates a presumption of probable cause. That presumption may be rebutted only by evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Manganiello v. City of New York*, 612 F.3d 149, 161-62 (2d Cir. 2010) (citations and punctuation omitted). The plaintiff bears the burden of proof to rebut the presumption. *Savino v. City of New York*, 331 F.3d 63, 73 (2d Cir. 2003).

Here, the Broome County grand jury indicted Plaintiff on the charge of Assault in the Second Degree after the altercation with inmate Kennedy. (Dkt. No. 46-31 ¶ 7.) Plaintiff has not produced any evidence rebutting the presumption of probable cause created by that indictment.

Even if the grand jury had not indicted Plaintiff, the undisputed evidence shows that Defendant Kleinsmith had probable cause to charge Plaintiff with assault in the second degree. "Probable cause to arrest exists when the arresting officer has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed . . . a crime." *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (internal quotation marks and citation

17

omitted).  Defendant Kleinsmith obtained statements from inmates and officers who witnessed some or all of the altercation between Plaintiff and Kennedy.  (Dkt. No. 46-12.)  None of the inmates interviewed admitted seeing who started the fight.  *Id*. at 2-5.  One inmate stated that he "saw them both fighting and all over each other, and Artis was biting Kennedy's cheek."  *Id*. at 4. Most of the officers arrived after the fight began and thus did not see who started it.  *Id*. at 6-9, 11-15.  Defendant Jellick stated that "[a]s I was yelling at Artis he came down the stairs where Kennedy was cleaning up his belongings and started a fight with him."  *Id*. at 10.  Video of the incident, while not entirely clear, supports Defendant Jellick's statement.  (Defs.' Mot. Summ. J., Ex. J, traditionally filed.)

In addition, the undisputed facts show that Defendant Kleinsmith had probable cause to charge Plaintiff with Aggravated Harassment of an Employee by an Inmate.  "An inmate . . . is guilty of aggravated harassment of an employee by an inmate when, with intent to harass, annoy, threaten or alarm a person in a facility whom he or she knows . . . to be an employee of such facility . . . he or she causes or attempts to cause such employee to come into contact with blood . . . by throwing, tossing, or expelling such fluid or material."  N.Y. Penal Law. § 240.32 (McKinney 2008).  Defendant Kleinsmith's investigation showed that Plaintiff spit blood during the incident.  Therefore, I recommend that the Court grant Defendants' motion for summary judgment and dismiss the malicious prosecution claim against Defendant Kleinsmith.

       3.    <u>False Arrest</u>

Plaintiff alleges that Defendant Kleinsmith falsely arrested him.  (Dkt. No. 1 at 7.)  As with the claim for malicious prosecution, Defendants move for summary judgment of this claim on the ground that Defendant Kleinsmith had probable cause to charge Plaintiff with Assault in

18

the Second Degree.  (Dkt. No. 46-39 at 19.)

The elements of a Fourth Amendment false arrest claim under 42 U.S.C. § 1983 are the same as those for a false arrest claim under New York law.  *Kraft v. City of New York*, 696 F. Supp. 2d  403, 418 (S.D.N.Y. 2010). "To state a claim for false arrest under New York law, a plaintiff must show that (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged."  *Savino*, 331 F.3d at 75 (punctuation and citation omitted). Where an officer has probable cause to arrest a plaintiff, the confinement is privileged. *Id*. at 76.  The burden of showing that there was probable cause for the arrest is on the officer. *Id*.  As discussed above, the undisputed evidence shows that Defendant Kleinsmith had probable cause to charge Plaintiff as she did.  Therefore, I recommend that the Court grant Defendants' motion for summary judgment and dismiss the false arrest claims against Defendant Kleinsmith.

4.     Defendants Harder and Smolinsky

Read broadly, the complaint asserts malicious prosecution and false arrest causes of action against Defendants Harder and Smolinsky.  The complaint alleges that Defendants Harder and Smolinksy "falsely accused" Plaintiff of "assaulting a known gang member" and "co-signed me being charged and indicted in the court of law."  (Dkt. No. 1 at 7.)  Defendants move for summary judgment of these claims, arguing that Defendants Harder and Smolinsky were not personally involved in bringing the charges against Plaintiff.  (Dkt. No. 46-39 at 9.)  Defendants are correct.

Under Second Circuit precedent, "'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  *Wright v.*

*Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885

(2d Cir. 1991)).  In order to prevail on a § 1983 cause of action against an individual, a plaintiff

must show some tangible connection between the unlawful conduct and the defendant.  *Bass v.*

*Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).  Here, it is undisputed that neither Defendant Harder

nor Defendant Smolinsky co-signed any paperwork related to the assault charge or Plaintiff's

indictment on that charge.  (Dkt. No. 46-38 ¶ 55.)

Moreover, Defendants Harder and Smolinsky cannot be held liable simply because they

supervised Defendants Kleinsmith and Jellick.  Where a defendant is a supervisory official, a

mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the

doctrine of *respondeat superior*) is insufficient to show his or her personal involvement in that

unlawful conduct.  *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347

F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501; *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d

Cir. 1985).  In other words, supervisory officials may not be held liable merely because they held

a position of authority.  *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996).  Rather, supervisory

personnel may be considered "personally involved" if they (1) directly participated in the

violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3)

created, or allowed to continue, a policy or custom under which the violation occurred, (4) had

been grossly negligent in managing subordinates who caused the violation, or (5) exhibited

deliberate indifference to the rights of inmates by failing to act on information indicating that the

violation was occurring.  *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).[7]  Here, none of the

---

[7]      In *Iqbal*, 556 U.S. 662, the Supreme Court ruled that where the underlying
constitutional claim is a claim of intentional discrimination, a supervisory official's liability must
be judged by the official's purpose rather than the official's knowledge of subordinates' actions or

*Colon* categories apply.[8]  Therefore, I recommend that the Court dismiss the claims against

Defendants Harder and Smolinsky arising from the April 29, 2009 incident.

     5.     <u>False Misbehavior Report</u>

     Plaintiff claims that Defendant Jellick "wrote a false report" that Plaintiff was the

aggressor in the fight with Kennedy.  (Dkt. No. 1 at 6.)  It is not clear whether the "false report"

to which Plaintiff refers is the misbehavior report that Defendant Jellick issued charging Plaintiff

with facility housing code violations (Dkt. No. 46-11 at 3) or the statement that he provided to

Defendant Kleinsmith during her investigation of the incident (Dkt. No. 46-12 at 10).

Defendants apparently assumed that the complaint refers to the statement that Defendant Jellick

---

policies.  The Second Circuit has not yet issued a decision discussing *Iqbal*'s effect on the *Colon* categories.  Several district courts in the Second Circuit have determined that *Iqbal* nullified some of the *Colon* categories.  *See Sash v. United States*, 674 F. Supp. 2d 531, 543-44 (S.D.N.Y. 2009) (collecting cases).  I will assume for the purposes of this motion that *Colon* remains good law.

    [8]     The second *Colon* category - that a supervisor is personally involved if he or she failed to remedy a violation after learning of it through a report or appeal - applies only to situations where an alleged violation is ongoing, not to situations involving a one-time violation. *Harnett v. Barr*, 538 F. Supp. 2d 511, 524 (N.D.N.Y. 2008) ("It has been held that an appropriate guiding principle for determining personal responsibility is where a grievance alleges an ongoing constitutional violation, the supervisory official who reviews the grievance is personally involved if he is confronted with a situation that he can remedy directly. If the official is confronted with a violation that has already occurred and is not ongoing, then the official will not be found personally responsible for failing to remedy a violation.") (internal quotation marks and citations omitted); *Rahman v. Fisher*, 607 F. Supp. 2d 580, 585 (S.D.N.Y. 2009) ("Receiving post hoc notice does not constitute personal involvement in the unconstitutional activity and cannot be said to have proximately caused the damage suffered by the inmate. Therefore, a supervisor may be liable for her failure to remedy a violation only in those circumstances where the violation is ongoing and the defendant has an opportunity to stop the violation after being informed of it. Similarly, liability may attach when a supervisor fails to act on reports of a staff member's previous assaults on the plaintiff and the plaintiff is assaulted again by that same staff member."). Here, Plaintiff's complaint about the April 29, 2009 incident does not involve an alleged ongoing violation.

provided to Defendant Kleinsmith, and thus have addressed Plaintiff's claims against Defendant

Jellick as claims for malicious prosecution and false arrest.  (Dkt. No. 46-39 at 18-19.)  To the

extent that Defendants' assumption is correct, I recommend that the claims against Defendant

Jellick be dismissed for the reasons discussed above regarding Defendant Kleinsmith.  However,

for the sake of completeness I will also address Plaintiff's possible claim that Defendant Jellick

violated his constitutional rights by issuing a false misbehavior report against him.

A prisoner's claim that a correctional officer filed a false misbehavior report may

implicate two separate constitutional provisions: (a) the Fourteenth Amendment right to

procedural due process; or (b) the right not to be retaliated against for exercising First

Amendment rights such as the right of access to the courts or the right to petition the government

for redress of grievances.  *Freeman v. Rideout*, 808 F.2d 949 (2d Cir. 1986); *Franco v. Kelly*, 854

F.2d 584 (2d Cir. 1988); *Jones v. Coughlin*, 45 F.3d 677 (2d Cir. 1995).

In the procedural due process context, the Second Circuit has held that while a prisoner

"has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct

which may result in the deprivation of a protected liberty interest," he *does* have "the right not to

be deprived of a protected liberty interest without due process of law."  *Freeman*, 808 F.2d at

951.  Where a prisoner is falsely accused of violating disciplinary rules, and a hearing is held on

the allegedly false charges that comports with the procedural due process standards set forth by

the Supreme Court in *Wolff v. McDonnell*, 418 U.S. 539 (1974), and any resulting guilty finding

is based on "some evidence," the correctional officer's filing of unfounded charges does not give

rise to procedural due process liability.  *Freeman*, 808 F.2d at 953-54.

Here, Plaintiff has not alleged that the hearing conducted by Defendant Brown and non-

defendant Evans regarding the April 29, 2009 incident failed to comport with the *Wolff*

standards.  Therefore, I recommend that the Court *sua sponte* dismiss any procedural due process

claim against Defendant Jellick regarding the misbehavior report.

In the retaliation context, "[a]n allegation that a prison official filed false disciplinary

charges in retaliation for the exercise of a constitutionally protected right ... states a claim under §

1983.  A plaintiff alleging retaliatory punishment bears the burden of showing that the conduct at

issue was constitutionally protected and that the protected conduct was a substantial or

motivating factor in the prison officials' decision to discipline the plaintiff.  The burden then

shifts to the defendant to show that the plaintiff would have received the same punishment even

absent the retaliatory motivation.  The defendant can meet this burden by demonstrating that

there is no dispute that the plaintiff committed the most serious, if not all, of the prohibited

conduct charged in the misbehavior report."  *Gayle v. Gonyea*, 313 F.3d 677, 681 (2d Cir.

2002)(citations omitted).

Here, Plaintiff has not alleged that Defendant Jellick wrote the misbehavior report in

retaliation for Plaintiff's exercise of any constitutionally protected right.  Therefore, I recommend

that the Court *sua sponte* dismiss any retaliation claim against Defendant Jellick regarding the

misbehavior report.

> **C.   July 24, 2009 Incident**

Read broadly, Plaintiff's complaint alleges that unknown Defendants failed to protect him

from an attack by inmate Jacob Rogers and then wrongfully penalized Plaintiff for the incident.

(Dkt. No. 1 at 6.)  Defendants argue that this claim should be dismissed because Plaintiff did not

exhaust his administrative remedies.  (Dkt. No. 46-39 at 15-18.)  Defendants are correct. Plaintiff

did not exhaust either the Inmate Grievance Process or the Disciplinary Appeals Process

regarding this incident.  (Dkt. No. 46-38 ¶ 77.)  Therefore, I recommend that Plaintiff's claims

regarding this incident be dismissed for failure to exhaust administrative remedies.

> **D.      March 15, 2010 Incident**

Plaintiff alleges that Defendants Valls and Jellick subjected him to excessive force on

March 10, 2010.  (Dkt. No. 1 at 5.)  Defendants argue that this claim should be dismissed

because (1) Plaintiff failed to exhaust his administrative remedies; and (2) Plaintiff has not raised

a triable issue of fact.  (Dkt. No. 46-39 at 9-14, 17-18.)  I will address both arguments.

> 1.      Exhaustion of Administrative Remedies

Defendants argue that Plaintiff failed to exhaust his administrative remedies regarding the

alleged March 15, 2010 use of excessive force.  (Dkt. No. 46-39 at 15-18.)  It is undisputed that

Plaintiff did not file any grievances at the facility.  (Dkt. No. 46-38 ¶ 77.)  Therefore, Plaintiff

failed to exhaust his administrative remedies.  Under *Hemphill*, however, I must consider

whether circumstances existed justifying Plaintiff's failure to exhaust.

Defendants argue that the fact that Plaintiff was transferred from BCCF into state custody

on the day of the alleged use of excessive force does not justify Plaintiff's failure to exhaust.

(Dkt. No. 46-39 at 17-18.)  Defendants argue that Plaintiff had "the obligation to pursue the

grievance procedures available in the facility where the conduct occurred.  That would probably

have meant sending the grievance by mail to the facility."  *Id*. at 18.  For this proposition,

Defendants cite *Thomas v. Henry*, No. 02 CIV. 2584, 2002 WL 922388 (S.D.N.Y. May 7,

2002)[9]; *Santiago v. Meinsen*, 89 F. Supp. 2d 435 (S.D.N.Y. 2000)[10], and *Finger v. McGinnis*, No. 99 Civ. 9870, 2004 WL 1367506 (S.D.N.Y. June 16, 2004).[11]

   *Hartry v. County of Suffolk*, 755 F. Supp. 2d 422 (E.D.N.Y. 2010), a more recent case than the cases cited by Defendants, is more persuasive.  In *Hartry*, the plaintiff was transferred from a county facility to a state facility two days after the incident that was the subject of his complaint.  *Id.* at 427-28.  Defendants argued that the complaint should be dismissed because the

--------

[9]      In *Thomas*, the court issued an order to show cause directing a prisoner to promptly serve the defendants with the summons and complaint or face dismissal for failure to serve.  In addition, the court noted that the face of the complaint showed that the plaintiff had not exhausted his administrative remedies at Riker's Island.  Without citation to authority, the court stated that "[t]he fact that plaintiff was moved from a City prison to a State prison does not relieve him of the obligation to pursue the grievance procedures available in the facility where the conduct occurred.  In [the plaintiff's] case, that would probably have meant sending the grievance by mail to the Superintendent of Riker's Island."  *Thomas*, 2002 WL 922388, at *2.

[10]      In *Santiago*, the prisoner was transferred from Downstate Correctional Facility to Attica three weeks after an alleged excessive force incident.  In his complaint, he alleged that he could not exhaust his administrative remedies because he was no longer housed at the facility where the incident occurred.  The court dismissed the complaint without prejudice to the filing of a new action.  The court directed the prisoner to attempt to file an untimely grievance with Downstate.  The court noted that if "the time bar is waived, and the grievance processed, plaintiff will have exhausted his administrative remedies.  He will then b[e] able to re-file this lawsuit and proceed on the merits of his claim.  If, however, [Downstate] finds no . . . mitigating circumstances and declines to process plaintiff's grievance, plaintiff may file a new action detailing and explaining: (1) his failure to file a timely grievance; (2) his efforts to file a late grievance; and (3) the alleged mitigating circumstances.  A court will then be required to decide whether plaintiff has exhausted his administrative remedies by seeking to file an untimely grievance or whether the exhaustion requirement should be waived based on mitigating circumstances such as his transfer to a different facility."  *Santiago*, 89 F. Supp. 2d at 441.

[11]      In *Finger*, the court found that a prisoner who complained of incidents at Downstate Correctional Facility was required to exhaust the administrative remedies at Downstate despite being transferred first to a locked psychiatric facility and then to another state correctional facility.  The court relied in particular on a regulation applicable to prisoners in the New York State correctional system that stated explicitly that a prisoner who has been transferred was required to file a grievance at the original facility.  *Finger*, 2004 WL 1367506,  at *4.  Defendants have not argued or provided evidence that Broome County has a similar regulation.

plaintiff failed to exhaust his administrative remedies.  The court, citing *Santiago* and other

cases, noted that "many courts have found that where a plaintiff had an opportunity to

meaningfully pursue [a] grievance while incarcerated at the facility where the grievance arose,

the failure to exhaust those remedies was not excused by the plaintiff's transfer to a different

facility."  *Id*. at 432.  But where a prisoner is transferred from a county facility to a state facility

shortly after an incident occurs, no meaningful opportunity to exhaust exists and the prisoner's

failure to exhaust is justified within the meaning of *Hemphill*.  *Id*. at 434-35.  Finding that the

plaintiff did not have a meaningful opportunity to exhaust, the court denied the defendants'

motion for summary judgment.

Here, Plaintiff alleges that Defendant Valls and Jellick used excessive force on him

during the very process of transferring him from a county facility to a state facility.  Plaintiff

alleges in his verified complaint that he took steps to file a grievance regarding the incident at

Elmira Correctional Facility but that "Elmira C.F. said they had nothing to do with Broome

County."  (Dkt. No. 1 at 4.)  Plaintiff did not have a meaningful opportunity to exhaust his

administrative remedies regarding the March 15, 2010 incident.  Accordingly, I find that

Plaintiff's failure to exhaust his administrative remedies regarding the incident was justified.

Therefore, I will address Plaintiff's claims regarding the March 15, 2010 incident on the merits.

2.   Excessive Force

Plaintiff alleges that Defendants Valls and Jellick subjected him to excessive force.[12]

---

[12]      Plaintiff was a pretrial detainee for some of his time at BCCF.  (Dkt. No. 46-39 at
9.)  The Due Process Clause of the Fourteenth Amendment protects the medical rights of pretrial
detainees, while the rights of convicted prisoners are protected by the Eighth Amendment.
*Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009).  However, both provisions apply the same
"deliberate indifference" standard.  *Id*. at 72.  I assume that the transfer to state custody indicates

(Dkt. No. 1 at 5.)  Defendants argue that Plaintiff has not raised a triable issue of fact.  (Dkt. No. 46-39 at 13-14.)  Although this is an extremely close case, I find that this cause of action should survive Defendants' motion for summary judgment.

When prison officials are "accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).  "In determining whether the use of force was wanton and unnecessary," the court should evaluate "the need for application of force, relationship between that need and the amount of force used, the threat reasonably perceived by responsible officials, and any efforts made to temper the severity of a forceful response."  *Id*. at 7 (citation and quotation marks omitted).  Not "every malevolent touch by a prison guard gives rise to a federal cause of action.  The Eighth Amendment's prohibition of cruel and usual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind."  *Id.* at 9.

Defendants Valls and Jellick have filed declarations attesting that the only force they used on Plaintiff on March 15, 2010 was handcuffing him in his cell and restraining him in the intake cell.  (Dkt. No. 46-29 ¶ 8; Dkt. No. 46-37 ¶¶ 14, 16-17.)  They assert that they needed to use that force to perform a strip search pursuant to BCCF protocol.  (Dkt. No. 46-37 ¶¶ 16, 18.)

Plaintiff's opposition to the motion for summary judgment, which consists entirely of a

_____

that Plaintiff had been convicted by March 15, 2010.  Therefore, this Report-Recommendation will refer to the Eighth Amendment rather than to the Fourteenth Amendment.

four-page, unverified letter to the Court, does not include any evidence.[13]  (Dkt. No. 49.)  The

only evidence the Court has supporting Plaintiff's version of events is his verified complaint.

(Dkt. No. 1.)  The Court can consider Plaintiff's statements in the complaint as evidence.  *See*

*Patterson v. Cnty. of Oneida*, 375 F.3d 206, 219 (2d. Cir. 2004) ("[A] verified pleading . . . has

the effect of an affidavit and may be relied upon to oppose summary judgment."); *Fitzgerald v.*

*Henderson*, 251 F.3d 345, 361 (2d Cir. 2001) (holding that the plaintiff "was entitled to rely on

[his verified amended complaint] in opposing summary judgment"); *Colon*, 58 F.3d at 872 ("A

verified complaint is to be treated as an affidavit for summary judgment purposes. . .") (citations

omitted).

Plaintiff states that Defendant Valls bent back Plaintiff's thumb, punched him, and kicked

him.  (Dkt. No. 1 at 5.)  He also states that Defendant Jellick stomped on his back so that he

could not move.  *Id*.  When viewed in the light most favorable to Plaintiff, this evidence supports

a reasonable inference that Defendants Valls and Jellick applied force maliciously and

sadistically to cause harm.[14]  Therefore, I recommend that the Court deny Defendants' motion for

---

[13]      In that letter, Plaintiff asserts that "it is an ongoing problem of excessive force and
assault on inmates at Broome County C.F. at the hands of C.O.s and gang members.  See
person[nel] records which I requested in discovery motion and was never given which would
reflect upon the behavior of Broome County Correction Officers (specifically C.O. Valls).  See
video tape of March 15th 2010 the day of transfer (I also requested this in a discovery motion and
never received it) . . . What personal interest would C.O. Jellick and C.O. Adam Valls have in
escorting me to the receiving room for transfer?  It is not Broome County proto[col] for C.O.s to
escort inmates to rec[ei]ving room for transfer unless inmates are in S.H.U.  I was not in S.H.U.
Other inmates from the same pod was also transferred that same morning, why wasn't those
inmates personally escorted?  Every statement made by me the plaintiff can be checked and
verified as the truth."  (Dkt. No. 49 at 1-2.)

[14]      I note that Defendants have not asked the Court to apply the rule in *Jeffreys v. City*
*of New York*, 426 F.3d 549 (2d Cir. 2005).

summary judgment of the excessive force claim against Defendants Valls and Jellick regarding the March 15, 2010 incident.

### E.    Issues With Visits

Plaintiff alleges that his mother tried to visit him but was refused by unnamed individuals.  (Dkt. No. 1 at 6.)  Plaintiff alleges that unnamed individuals allowed him only a non-contact visit on another occasion despite the fact that he had never committed any visiting room violations.  *Id*.  It is undisputed that Plaintiff did not file any grievances at the facility. (Dkt. No. 46-38 ¶ 77.)  Nothing in the record indicates that Plaintiff's failure to file grievances regarding the visiting issues was justified.  Therefore, I recommend that the Court dismiss these claims for failure to exhaust administrative remedies.

### F.    Defamation

Plaintiff alleges that "[a]ll of these officer[s]" accused him of being a rapist "when I am no rapist at all."  (Dkt. No. 1 at 7.)  Defendants move for summary judgment of this claim.  (Dkt. No. 46-39 at 19-20.)

Defamation is "the making of a false statement which tends to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society."  *Foster v. Churchill*, 87 N.Y.2d 744, 751 (1996) (punctuation omitted).  "Generally, spoken defamatory words are slander; written defamatory words are libel."  *Albert v. Loksen*, 239 F.3d 256, 265 (2d Cir. 2001).  Under New York law, to state a cause of action for either libel or slander, a plaintiff must allege that the defendant made a false or defamatory statement of fact concerning the plaintiff.  *Conte v. Newsday, Inc.*, 703 F. Supp. 2d 126, 146 (E.D.N.Y. 2010); *NAS Elec., Inc. v.*

*Transtech Elec. PTE Ltd.*, 262 F. Supp. 2d 134, 148 (S.D.N.Y. 2003).  While a complaint need

not contain the exact words that constitute the slander or libel, the plaintiff must allege facts that

provide an adequate identification of the purported communication, and an indication of who

made the communication, when it was made and to whom it was communicated.  *Conte*, 703 F.

Supp. 2d at 148.  Here, Plaintiff's cursory allegation does not state a claim.  Therefore, I

recommend that the Court grant Defendants' motion for summary judgment and dismiss

Plaintiff's defamation claim.

### G.      Personal Involvement

Defendants argue that several Defendants were not personally involved in the incidents of

which Plaintiff complains.  (Dkt. No. 46-39 at 9, 21.)  Defendants are correct.

#### 1.      Conners

The complaint lists "C.O. Conners" in the list of parties.  (Dkt. No. 1 at 2.)  The

complaint states "He have two other brother at BCCF.  This specific one is heavy set."  *Id*.  Other

than that, there are no references to Defendant Conners in the complaint.  On September 1, 2010,

Plaintiff advised the Court that Defendant Conners' first name is Chris.  (Dkt. No. 26.)

Defendant Conners answered the complaint on November 24, 2010.  (Dkt. No. 34.)  Defendants

argue that Defendant Conners should be dismissed because Plaintiff "has failed to make adequate

allegations against" him.  (Dkt. No. 46-39 at 21.)  Defendants are correct.  Therefore, I

recommend that the Court grant Defendants' motion for summary judgment and dismiss all

claims against Defendant Conners.

#### 2.      Brown

Plaintiff has named Defendant Brown as the defendant formerly identified as C.O. John

Doe. (Dkt. No. 26.) However, the complaint does not include any allegations specifically against C.O. John Doe. Defendants argue that the Court should dismiss Defendant Brown because Plaintiff "has failed to make adequate allegations against" him. (Dkt. No. 46-39 at 21.) Defendants are correct. Defendant Brown is not discussed in the complaint. The evidence shows that his only involvement in the incidents of which Plaintiff complains was serving as the hearing officer at several of Plaintiff's disciplinary hearings. (Dkt. No. 46-23.) Plaintiff does not allege that his rights were violated at any such hearing. Therefore, I recommend that the Court grant Defendants' motion for summary judgment and dismiss the claims against Defendant Brown.

ACCORDINGLY, it is

RECOMMENDED that Defendants' motion for summary judgment (Dkt. No. 46) be GRANTED IN PART AND DENIED IN PART. It is recommended that the Court dismiss all claims except the excessive force claim against Defendants Jellick and Valls regarding the March 15, 2010 incident; and it is further

ORDERED that the Clerk correct the caption to show that the true name of "C.O. Adam" is "Adam M. Valls" and the true name of "Major Smolynsk" is "Mark W. Smolinsky."

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 72, 6(a).


Dated: July 31, 2012
          Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge